UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRAR BROS. FARM, INC., | CASE NO. C11-358-RSM |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JANET NAPOLITANO, Secretary of the Department of Homeland Security, ALEJANDRO MAYORKAS, Director of US Citizenship & Immigration Services, and WARREN JANSSEN, Acting Director, the US Citizenship & Immigration Services Nebraska Service Center, | |
| Defendants. | |

**I. INTRODUCTION**

The action arises out of a denial by USCIS for the plaintiff's I-140 Immigrant Petition. Summary judgment is sought by both parties. Dkt. #13 and Dkt. #18.  For the reasons set forth below, Defendants' motion is GRANTED.

## II. BACKGROUND

The beneficiary, Mr. Harbinder S. Brar, is a citizen of Canada and resides in Abbotsford, British Columbia.  He and his brother, Jagmail S. Brar, are each 50% shareholders of a Canadian corporation engaged in real estate development, Green Valley Development Ltd.  The brothers also equally own Brar Bros. Farm, Inc. ("Brar Bros."), a 155-acre U.S. berry farm founded in 1997.  The farm is near Everson, Washington.

On October 26, 2009, Brar Bros. filed an I-140 Petition for Alien Worker on behalf of the Mr. Brar pursuant to 8 U.S.C. § 1153(b)(1)(C), INA § 203(b)(1)(C), seeking to classify him as a multinational manager.  He intended to work as the President and General Manager of the company's U.S. farm.  Prior to filing, the beneficiary worked for the Canadian real estate business as President and General Manager.  He was also the part time General Manager of Brar Bros. Farm with an E-2 visa status (treaty investors).

On April 12, 2010, NSC, a division of USCIS, issued a Request for Evidence ("RFE") and asked for a detailed description of the beneficiary's duties, day-to-day tasks, and an estimate of the percentage of time the beneficiary will dedicate to each specific task or duty.  The petitioner responded on May 21, 2010 with the requested information.

On September 2, 2010, NSC issued their decision denying the petition.  Several reasons were given for the denial.  NSC concluded that the General Manager position at Brar Bros. did not qualify as either a "personnel" or "function" manager.  He failed to qualify as a personnel manager because he did not adequately supervise any qualified employees and failed as a function manager because the petitioner did not provide evidence that the beneficiary managed an essential function.  They further denied that the beneficiary's previous position in Canada qualified as a function manager because the beneficiary failed to show that he was primarily

occupied with qualified managerial duties.  The plaintiff filed this action challenging the

sufficiency of the evidence and the legal conclusions of NSC.

### III. DISCUSSION

**A.  Jurisdiction**

The Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and under the

Administrative Procedure Act, 5 U.S.C. §§ 701-706.

**B.  Relevant Statutes and Regulations**

The petition sought to classify Mr. Brar as a multinational executive or manager under

Section 203(b)(1)(C) of the Immigration and Nationality Act ("INA"); 8 U.S.C. § 1153(b)(1)(C).

An alien qualifies for such a classification if

the alien, in the 3 years preceding the time of the alien's application for
classification and admission into the United States under this subparagraph, has
been employed for at least 1 year by a firm or corporation or other legal entity or
an affiliate or subsidiary thereof and the alien seeks to enter the United States in
order to continue to render services to the same employer or to a subsidiary or
affiliate thereof ***in a capacity that is managerial or executive***.

8 U.S.C. § 1153(b)(1)(C) (emphasis added).

The INA defines "managerial capacity" as

an assignment within an organization in which the employee primarily –
(i)     Manages the organization, or a department, subdivision, function, or
        component of the organization;
(ii)    Supervises and controls the work of other supervisory, professional, or
        managerial employees, or manages an essential function within the
        organization, or a department or subdivision of the organization;
(iii)   If another employee or other employees are directly supervised, has the
        authority to hire and fire or recommend those as well as other personnel
        actions (such as promotion and leave authorization) or, if no other
        employee is directly supervised, functions at a senior level within the
        organizational hierarchy or with respect to the function managed; and
(iv)    Exercises discretion over the day-to-day operations of the activity or
        function for which the employee has authority. A first-line supervisor is
        not considered to be acting in a managerial capacity merely by virtue of
        the supervisor's supervisory duties unless the employees supervised are
        professional.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

8 U.S.C. § 1101(a)(44)(A); INA § 101(a)(44)(A).

Additionally, the Code of Federal Regulations defines "managerial capacity" as:

> An assignment within an organization in which the employee primarily:
> (A)    Manages the organization, or a department, subdivision, function, or component of the organization;
> (B)    Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (C)    Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised, or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (D)    Exercises direction over the day-to-day operations of the activity or function for which the employee has authority.

8 C.F.R. § 204.5(j)(2).

The plaintiff can qualify for the managerial capacity category as either a "personnel manager" or a "function manager." The Adjudicator's Field Manual ("AFM") lays out the following requirements for each category:

> As it relates to "personnel managers," managerial capacity means an assignment within an organization in which the beneficiary ***primarily***:
>
> •    Manages the organization, department, subdivision, function, or component of the organization;
> •    Supervises and controls the work of other supervisory, professional, or managerial employees;
> •    Possesses authority to hire and fire or recommend those and other personnel actions (such as promotion and leave authorization) for employees directly supervised; and
> •    Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.
>
> As it relates to "function managers," managerial capacity means an assignment within an organization in which the beneficiary ***primarily***:
>
> •    Manages the organization, or a department, subdivision, function, or component of the organization;

- Manages an essential function within the organization, or a department or subdivision of the organization;
- Functions at a senior level within the organizational hierarchy or with respect to the function managed; and
- Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.

AFM, Chapter 22.2(i)(3)(E).

**C.  Standards of Review**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The evidence is viewed in the light most favorable to the non-moving party.  *Id.*  However, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The Court may set aside an agency decision only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Family Inc. v. USCIS,* 469 F.3d 1313, 1315 (9th Cir. 2006).   The agency's factual findings are reviewed for substantial evidence.  *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003) (amended by 339 F.3d 1012 (9th Cir. 2003)).  The Court should not disturb the agency's findings under this deferential standard "unless the evidence presented would compel a reasonable fact finder to reach a contrary result."  *Id.* at 895.  USCIS's interpretation of its own regulation is entitled to *Auer* deference where its interpretation of an ambiguous regulation is controlling unless "plainly

1  erroneous or inconsistent with the regulation.*" *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th

2  Cir. 2006) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).  The burden of proof rests solely

3  with the petitioner.  8 U.S.C. § 1361; *Matter of Treasure Craft of California*, 14 I&N Dec. 190,

4  193 (Comm. 1972).

5  **D.  Legal Analysis**

6         The Court finds that summary judgment is proper.  While some of the reasons for

7  denying the petitioner's visa appear contrary to law and lack clarity, additional reasons support

8  the agency's conclusions that Mr. Brar was not engaged in primarily managerial duties in his

9  previous position in Canada or his new position at the United States affiliate.  Because the Court

10  is cannot conclude that these reasons were arbitrary, capricious, an abuse of discretion, or

11  contrary to law, the decision of NSC must be upheld.  Summary judgment for Defendants is

12  GRANTED.

13      1.  The position at the U.S. affiliate Brar Bros. is not properly "managerial"

14         To qualify for the L-1 nonimmigrant visa, the petitioner must show that the beneficiary

15  will "enter the United States in order to continue to render services to the same employer or to a

16  subsidiary or affiliate thereof in a capacity that is managerial or executive."  8 U.S.C. §

17  1153(b)(1)(C).  The INA lays out a definition for "managerial capacity" and lists several

18  requirements.  8 U.S.C. § 1101 (a)(44)(A); INA § 101(a)(44)(A).  Among the requirements is

19  that the beneficiary primarily "supervises and controls the work of other supervisory,

20  professional, or managerial employees, or manages an essential function within the organization,

21  or a department or subdivision of the organization."  *Id.* at (ii).  The regulations use the same

22  language.  8 C.F.R. §204.5(j)(2).  Employees may meet this requirement by qualifying as either a

23  "personnel manager" or a "function manager."  AFM, Chapter 22.2(i)(3)(E).

24

   *a.*   *While NSC erred in its finding that the Field Boss was not a supervisor, substantial evidence supports NSC's finding that the beneficiary was not a "personnel manager" because he failed to supervise qualified employees*

The plaintiff failed to provide evidence that the beneficiary qualified as a "personnel" manager. While substantial evidence supports the conclusion that the Field Boss is more than a mere interpreter and fits the requirements of a supervisor, the Court finds that there is substantial evidence to support NSC's finding that the beneficiary is not a personnel manager because he is engaged in the daily operation of the farm. Thus, substantial evidence supports NSC's decision denying the petition on the grounds that the General Manager position at the U.S. affiliate does not comport with the statutory requirements.

*(i)   Evidence compels the finding that the Field Boss is a supervisor and not merely an interpreter*

To qualify as a "personnel" manager, the plaintiff must show that the beneficiary primarily supervises and controls the work of other supervisory, professional, or managerial employees. 8 U.S.C. § 1101(a)(44)(A)(ii). Petitioner alleges the beneficiary supervised the Field Boss. Therefore, to qualify as a "personnel" manager, the petitioner must show that the Field Boss supervised staff. NSC contended in the denial that "the petitioner has failed to establish that the beneficiary actually supervises any personnel that qualify as a professional, manager, or supervisor." Dkt. #1, Ex. #1, p. 4. To support this assertion, NSC summarily dismissed the Field Boss's supervisory designation and focused on establishing that the Field Boss does not qualify as a "professional." *Id.* The plaintiff conceded that the Field Boss is not a professional but rather argued that he fit the definition of a supervisor. He also argued the Field Boss supervised a number of farm workers and that this is supported by substantial evidence on the record. Dkt. #13, p. 16-18.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

1       The Court "must examin[e] the reasons for agency decisions—or . . . the absence of such

2   reasons" and must determine "'whether the decision was based on a consideration of relevant

3   factors.'"  *Judulang v. Holder*, 132 S.Ct. 476, 484 (2011) (quoting *Motor Vehicle Mfrs. Assn. of*

4   *United States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983)).  Here, the

5   plaintiff provided a list of job duties for the Field Boss.  Dkt. #13, p. 16-18.  NSC did not

6   mention any of them in its decision denying the position is supervisory, nor did they make any

7   finding that the job duties lacked credibility.  Instead, they concluded that the Field Boss was

8   chosen because of his ability to interpret the Spanish language for the rest of the field workers.

9   Dkt. #1, Ex. #1.  Even if this is true, it is not dispositive of the issue of whether or not the job of

10  the Field Boss, as a whole, is supervisory for the purposes of the visa petition.  Rather, the record

11  shows that the ability to interpret the Spanish language is merely a prerequisite for the

12  supervisory position, as the supervisor would need to be fluent in both languages to be

13  supervised in English by Mr. Brar and supervise the field workers who likely speak only

14  Spanish.  The job duties supplied by the plaintiff show that there is more to the Field Boss

15  position than mere interpreter, and these relevant factors were ignored by NSC.  For example, the

16  Field Boss "hires the lower Farmworkers," "[a]ssigns duties," "coordinates . . . work plans" and

17  "provides training."  Dkt. #13, p. 16.  Therefore, the Court finds that the evidence on record

18  compels a conclusion that the Field Boss is a supervisor.

19  *(ii)   The record substantially supports a finding that the beneficiary does not sufficiently*
    *supervise the Field Boss*

20      To qualify as a "personnel" manager for the purposes of the petition, plaintiff must also

21  show that the beneficiary *supervises* and *controls* the Field Boss.  8 U.S.C. § 1101(a)(44)(A)(ii).

22  NSC determined that the Field Boss's job description, "failed to establish that the beneficiary

23  actually supervises the Field Boss" and that Brar Bros. "failed to demonstrate that

24

1  [the beneficiary] will be employed primarily in a qualifying [capacity] whereby a subordinate

2  staff of . . . supervisory personnel will relieve [him] from performing the day-to-day duties

3  required to operate the business."  Dkt. #18, p. 8 (quoting AR. 5).  The plaintiff claims the

4  evidence substantially shows the beneficiary operates in a managerial capacity.

5        "An individual shall not be considered to be acting in a managerial or executive

6  capacity . . . merely on the basis of the number of employees that the individual supervises" and

7  the agency must "take into account the reasonable needs of the organization . . . in light of [its]

8  overall purpose and stage of development" in cases where "staffing levels are used as a factor in

9  determining whether an individual is acting in a managerial capacity."  8 U.S.C. §

10  1101(a)(44)(C); *see also Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1070 (9th Cir.

11  2008).  Further, the size of an organization and its staffing levels, while not determinative, are

12  relevant factors to be considered in determining whether its operations are substantial enough to

13  support a manager.  *Family*, 469 F.3d at 1316 (citing *Republic of Transkei v. INS,* 932 F.2d 175,

14  178 (D.C. Cir. 1991).  The scope of a Court's review is narrow, and it cannot substitute its

15  judgment for that of the agency.  *Judulang*, 132 S.Ct. at 483.

16        The description of the job duties wherein the beneficiary "supervised" the Field Boss

17  could lead a reasonable fact-finder to agree with NSC that the operation is insufficient to support

18  a manager.  The beneficiary allegedly spent 37.5% of his day with the Field Boss "discuss[ing]

19  farm activities" and "directing" him.  Dkt. #1, Ex. #1, p. 3.  While there is no cap on the amount

20  of time spent supervising, spending three hours a day with a supervisor "directing" or

21  "discussing" aspects of the farm is vague.  It is neither arbitrary nor capricious for NSC to

22  conclude the entire "supervision" seems more like participating in the daily operations of the

23  farm.  Brar Bros. is a small operation and the beneficiary supervised only one employee.  The

24

1  plaintiff claims that "at peak season, up to 25 farm employees . . . will work under Mr. Brar" by

2  working under the Field Boss.  Dkt. #13, p. 9.  These workers are admittedly seasonal, and it is

3  unclear from the record how many, if any of them, work year-round.  The fluctuation of

4  employees further weakens the farm's need for a manager/supervisor structure.

5        The petitioner also argued that NSC erred as a matter of law when it found that "[a]s an

6  owner/operator of a small business, the beneficiary's primary assignment cannot be supervising a

7  subordinate staff of professional, managerial, or supervisory personnel."  Dkt. #13, p. 15.  I agree

8  with the plaintiff that this statement, taken alone, is contrary to established law.  Neither the

9  statute, nor the AFM place direct limitations on the amount of time the manager spends

10  managing lower supervisory employees. *See* 8 U.S.C. § 1101(a)(44)(A)(ii); AFM, Chapter

11  22.2(i)(3)(E).  However, NSC seems to have meant that this farm lacked the requisite

12  organizational complexity if the supervisor spent so much of his time with the supervisory

13  employee.  NSC continually maintained that the "supervision" was inadequate.

14  The defendant's decision to deny the petition based on the beneficiary's failure to supervise

15  qualified employees has a substantial basis in evidence and is not arbitrary.  The decision should

16  be upheld.

17        (b)   *The record supports a finding that Brar Bros. lacked the complexity required to*
                 *support a "function" manager*

18

19        Even if an employee does not qualify as a "personnel" manager, they may also qualify for

20  an L-1 nonimmigrant visa as a "function" manager by showing they primarily "manage[] an

21  essential function within the organization, or a department or subdivision of the organization."  8

22  U.S.C. § 1101 (a)(44)(A)(ii); INA § 101(a)(44)(A)(ii).  An employee need not supervise any

23  employees to be a function manager but must "function[] at a senior level within the

24  organizational hierarchy or with respect to the function managed."  8 U.S.C. § 1101

1    (a)(44)(A)(ii); INA § 101(a)(44)(A)(ii).  The petitioner seems to have belatedly sought to qualify

2    the beneficiary's position at Brar Bros. as a "function" manager.  Dkt. #19, p. 4.  Petitioner

3    seemed to claim that the beneficiary's essential function is "manag[ing] the organization."  *Id.*

4    NSC remained unpersuaded that "operating a company in its entirety constitutes managing an

5    essential function" and maintained that petitioner's "operations were insufficient to support a

6    managerial position."  Dkt. #1, Ex. #1, p. 4; Dkt. #18, p. 9.

7           To qualify as a "function" manager, the beneficiary must primarily "manage[] an

8    essential function within the organization."  8 U.S.C. § 1101 (a)(44)(A)(ii); INA §

9    101(a)(44)(A)(ii).  Stating, generally, that oversight of a business is an essential function is not

10   sufficient.  Specifics are required to establish managerial or executive capacity.  *See Fedin Bros.*

11   *Co., Ltd. v. Sava,* 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989), *aff'd,* 905 F.2d 41 (2d Cir. 1990).

12   The petitioner's description of the beneficiary's daily duties must demonstrate that the beneficiary

13   *manages* the function rather than *performs* the duties related to the function.  *See Matter of*

14   *Church Scientology Int'l,* 19 I&N. Dec. 593, 604 (Comm. 1988).  In this matter, the petitioner

15   did not provide specific evidence that the beneficiary *managed* an essential function, nor did he

16   discuss what the essential functions were.  He simply stated that operating the company qualified

17   the beneficiary and relied on a description of duties.  However, the description of the

18   beneficiary's duties showed only that he was running an organization.  They failed to show that

19   the organization was sufficient to warrant a function manager.  As discussed above, the lack of

20   employment of sufficient personnel to relieve the beneficiary from performing operational and

21   administrative tasks is further evidence that the organization does not warrant a "function"

22   manager.  The petitioner failed to show that the beneficiary qualified for the classification

23   sought.

24

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 11

2.   The position at the Canadian affiliate is not properly "managerial" because the position does not qualify as a "function" manager

There is an additional requirement to qualify for the classification as a multinational manager or executive.  The beneficiary must hold a job abroad that is also managerial "in the three years preceding the . . . application . . . for at least one year" for the same employer or subsidiary.  8 U.S.C. § 1153(b)(1)(C).  This means that the same "managerial" or "executive" requirements apply to the position held by the plaintiff in Canada.  Plaintiff seeks to classify the beneficiary's position as President and General Manager for the Canadian entity, Green Valley Development, as a function manager.  Dkt. #13, p. 18.  The plaintiff asserts that Mr. Brar's position qualifies as a function manager because he spent more than 50% of his time managing an essential function, mainly arranging and overseeing the work of independent contractors, professionals, and others to construct houses and build subdivisions.  Dkt. #13, p. 20.  While NSC contends the petitioner did function at a senior level in the organization, they claim he failed to demonstrate that his position would qualify as managerial because he is not "primarily" engaged in managing the essential function.  Dkt. #1, Ex. #1, p. 5.

To qualify as a function manager, the petitioner must establish that the function is essential and that the manager "functions at a senior level within the organizational hierarchy or with respect to the function managed."  8 U.S.C. § 1101 (a)(44)(A)(ii); INA § 101(a)(44)(A)(ii). The petitioner must show that the beneficiary's duties will primarily be managerial and that he will not be primarily performing the function.  8 C.F.R. § 204.5(j)(2).  A manager does not need to have any employees, but size may be considered in evaluating whether or not the beneficiary will be forced to engage in non-managerial duties because of insufficient subordinate staff to relieve him.  8 C.F.R. § 204.5(j)(4)(ii), *see also Family,* 469 F.3d at 1316.  "Even if a beneficiary

1   has some managerial duties, it does not compel the conclusion that such tasks comprised the

2   beneficiary's primary responsibilities. *See Brazil*, 531 F.3d at 1070.

3          Taking the evidence on the record as a whole, the Court cannot conclude that a fact-

4   finder would be compelled to find differently than NSC.  NSC determined that general "office

5   work" and "travel time" were not duties that counted toward managing the essential function.

6   They further subtracted time from the 39% of time spent "contract[ing] with and oversee[ing]

7   [the] work of contractors and subcontractors" because they remained unconvinced that

8   everything listed was a necessary function of a manager, stating that "[i]t is . . . uncertain how

9   many [contractor] meetings actually required an owner to attend."  Dkt. #1, Ex. #1, p. 5.  The

10  time spent with contractors was reasonably reduced because of this skepticism and was not an

11  unreasonable miscalculation based on a forty-hour week as plaintiff claims.  Dkt. #18, p. 7.

12         The plaintiff also believes NSC erred in considering the fact that the Canadian company

13  had no employees.  There are no other employees of the business to aid the beneficiary in

14  performing day-to-day non-managerial duties, rendering the beneficiary responsible for the

15  entire company.  NSC can consider size in its examination of managerial duties, and there is no

16  indication they improperly did so here.

17         The Court finds that the decision of NSC regarding the Canadian affiliate has a

18  substantial basis in evidence and cannot be overturned as arbitrary, capricious, an abuse of

19  discretion, or otherwise without basis in the law.

20                                    **IV. CONCLUSION**

21         The plaintiff failed to establish that NSC erred in its denial of the L-1 nonimmigrant visa

22  petition on behalf of Mr. Brar and Brar Bros. Farms.  The burden is on the petitioner to prove the

23  beneficiary qualifies as a manager or executive and must support their application with sufficient

24

1  evidence.  NSC, on the other hand, has shown sufficient evidence to support its factual

2  conclusions and has shown that their denial was not arbitrary, capricious, an abuse of discretion,

3  or without a basis in the law. The plaintiff failed to establish that the beneficiary qualified as a

4  personnel or function manager for either the U.S. position or the position in Canada.  For these

5  reasons, and the reasons stated above, the Court GRANTS Defendants' motion for summary

6  judgment (Dkt. #18) and DENIES Plaintiff's motion for summary judgment (Dkt. #13).

7          Dated this 8th day of August 2012.

8

9

10

          RICARDO S. MARTINEZ
11          UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 14